56 CCPA

**Application of Alfred F. STEINHAUER and Joseph C. Valenta.**

**Patent Appeal No. 8067.**

United States Court of Customs and Patent Appeals.

May 15, 1969.

---

**412**

Griswold & Burdick, Midland, Mich., Donald R. Dunner, Washington, D.C., Allan R. Plumley, Wilmington, Del., attorneys of record, for appellants. Glwynn R. Baker, Midland, Mich., of counsel.

Joseph Schimmel, Washington, D.C., for the Commissioner of Patents. Fred W. Sherling, Washington, D.C., of counsel.

Before WORLEY, Chief Judge, KIRKPATRICK, Judge, sitting by designation, and RICH, ALMOND, and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–18 of application serial No. 289,391, filed June 20, 1963, entitled "Akylhalodiphenyl Oxide Sulfonates." No claim is allowed.

The claimed invention, defined in various ways in different claims, is *mixtures* of compounds. The nucleus of these compounds is diphenyl oxide. To the nucleus is attached one alkyl radical having from 12 to 22 carbon atoms, one or two halogens other than fluorine, and one or two sulfonic acid or sulfonate radicals. They can be visualized by the following modification of a chart used by appellants at argument:

AN ALKYL GROUP $(C_{12-22})$

DIPHENYL OXIDE

1 or 2 SULFONIC ACID $(SO_3H)$ or SULFONATE $(SO_3M)$ GROUPS

1 or 2 HALOGENS (Cl, Br, or I)

wherein M is a water-solubilizing cation, more particularly defined in the specification as follows:

\* \* \* wherever M is used, the cation is present in sufficient quantity to satisfy the valence of the sulfonate radical with which it is associated. Thus, in the radical $-SO_3M$, it is to be understood that M represents 1 molar proportion of a mono-valent cation, $\frac{1}{2}$ molar proportion of a divalent cation or $\frac{1}{3}$ molar proportion of a trivalent cation.

Appellants may produce their mixtures by starting with diphenyl oxide and halogenating, alkylating, and sulfonating it in any desired sequence, according to known procedures, thus producing a mixture of sulfonic acids. The latter may be converted to any desired salt thereof by reaction with the appropriate base or salt. It is also disclosed that either or both of the benzene rings of the diphenyl oxide may be alkylated or halogenated before being condensed to form the diphenyl oxide nucleus.

The principal problem in this case derives from the fact that appellants do not disclose the position of all of the substituents—i.e., the alkyl, halogen, and sulfonate—for any one specific compound. While some positions are mentioned as to some compounds, appellants clearly are not concerned with producing specific compounds nor with the positioning of the substituents on the nucleus.

Appellants' brief refers, inter alia, to the following passage from the specification on this point:

It is readily apparent that in the synthesis of the compounds of the invention one may, and usually does, obtain a mixture of cogeneric products wherein the number of alkyl, halogen or sulfonate substituents on the diphenyl oxide nucleus has an average value other than the whole numbers 1 or 2. Thus, a typical product may contain an average of 1.1 alkyl groups, 1.8 halogen atoms and 1.4 sulfonate groups. Such mixtures are in general fully as useful as the pure compounds and are sometimes actually preferred to the latter.[1]

Commenting further, the brief says:

\* \* \* the product made by any particular process will in general be a cogeneric mixture of isomers and analogs having in general the same basic properties and uses as the individual components thereof.

The specification appears to bear this out and says, with respect to uses, that the mixtures, resulting from the process generally described and as exemplified in numerous examples, are highly surface-active, are useful as detergents, wetting agents, emulsifying and dispersing agents, corrosion inhibitors, and oil-soluble surfactants and have the additional desirable properties of inhibiting the growth of bacteria and fungi. Lengthy descriptions of specific uses in the laundry and dry cleaning industries with cleaning tests are included as well as tests of bacteriostatic and fungistatic effects both on materials and, in the form of medical soaps, on humans. Uses are also described in agriculture and paper pulp manufacture. Utility is not questioned, and patentability is in no wise dependent on utility or proof of unexpected advantageous properties. There is no issue of novelty, and no prior art reference is relied on.

Representative claims read:

1. A cogeneric mixture of alkylated, halogenated, sulfonated diphenyl oxide wherein there is one alkyl radical, and it contains 12 to 22 carbon atoms; one to two halogen atoms, and they have atomic numbers from 17 to 53; and one to two sulfonate groups.

3. A cogeneric mixture of compounds corresponding to the formula

---

[1]. The specification does not define "cogeneric" but takes its meaning for granted. Webster's New International Dictionary (2d ed.) equates it with "cogeneric" and defines the latter as meaning, "Allied in origin, nature, or action; specif., Biol., belonging to the same genus."

wherein R is an alkyl radical containing 12 to 22 carbon atoms; X is a halogen having an atomic number from 17 to 53; m and n are integers from 1 to 2; and, M is a water-solubilizing cation.

Claim 2 resembles claim 3 in form but is inclusive of the acid compounds as well as the salts.

Claims 4–9 all depend on claim 3 and specify various materials for "M," such as sodium (claim 5) or a 2-hydroxyethylammonium radical (claim 9).

Claims 10–18 may be exemplified by claim 15, which the Patent Office considers the most specific. It reads:

15. Sodium 4-dodecyl-4'-chlorodiphenyl oxide sulfonate.

As the Patent Office recognizes, even this seemingly specific claim is at least subgeneric since the position of the sulfonate group is unspecified and it covers only mixtures of different isomers.

Determining exactly the ground of rejection of the claims is not without difficulty. The examiner, in her final rejection, rejected claims 1–18 as unduly multiplied, as unduly broad, as based on an inadequate disclosure, and objected to the term "cogeneric mixture," "since there is no limitation on which components make up the mixture and in what amounts." At the same time she admitted that "almost every nuclear substitution reaction results in a mixture of isomeric reaction products." In the Examiner's Answer, the same examiner withdrew the undue multiplicity rejection, rested on the unduly broad rejection and also contended that the claims were "based on an inadequate disclosure as required by 35 U.S.C. 112." We take this to mean that under section 112 an adequate disclosure is required to support the claims and that something is lacking in appellants' disclosure. Replying to appellants' brief before the board, the examiner said:

Applicants apparently miss the meaning of the rejection. The issue before us is whether applicants have adequately supported the claimed compounds, i.e. disclosing a method for preparing and isolating any one of the compounds. So even assuming that the claimed isomers are all equivalent, as urged [,] each claimed compound *must* be capable of being produced by disclosed or known methods. For example, how would one prepare 2-sulfo-4-dodecyl-4-chloro diphenyloxide which is encompassed by the narrowest claim, claim 15?

The board said:

The Examiner's position, as expressed in his Answer, is somewhat confusing in its reference to preparing and isolating a single compound since, as pointed out by appellants, the claims are directed to cogeneric mixtures.

The board affirmed the rejection for a limited reason, specifically, *"only* in holding claims 1 to 18 as failing to comply with the requirements of 35 U.S.C. § 112." (Emphasis ours.) By itself, it is hard to tell whether the board meant by this statement that the *claims* fail to comply with section 112—only the second paragraph being concerned with *claims*—or whether it really meant to affirm the examiner in her view that the *specification* fails to comply with section 112, so as not to *support* the claims. The following central paragraph from the board's brief opinion, though ambiguous, would seem to favor the latter view:

Nowhere in the specification is there any disclosure of the preparation of a mixture wherein the positions of the alkyl, halogen, and sulfonic acid substituents are specifically located as to their position on the diphenyl oxide ring[s]. Thus it cannot be determined from the specification just what mixture of isomers is intended to be included in the claim terminology which does not specify the ring position of the substituents. As

the Examiner has suggested, the specification does not demonstrate the manner of preparing mixtures of all possible isomers of diphenyl oxide containing the three stated substituents. The requirements of 35 U.S.C. 112 are therefore not met.

The board failed to say *what* requirements of section 112 are not met. First, it spoke of the clarity of the specification *and* claims as to what "is intended to be included in the claim terminology," which implies reliance on the second-paragraph requirements of section 112 for particular and distinct claiming. Next, however, it spoke of failure to *disclose* "the manner of preparing mixtures of all possible isomers," which goes to disclosure and the requirements of paragraph one of section 112 for an enabling disclosure. Then, in the next paragraph of its opinion, the board returned to a discussion of *how* the invention *should* be claimed, discussing product-by-process claims, which the examiner had contended was the only proper way to claim this invention. Finally, in the last paragraph of the opinion, the board said "the claims are unduly broad in failing to set forth the positioning of the ring substituents and the disclosure in the specification is inadequate in failing to provide operative examples producing mixtures having any identifiable positioning of all the ring substituents * * *." Wherefore, it sustained the "rejection based on 35 U.S.C. 112 * * *."

The solicitor takes still another view. Although the board said "at best, proper complete product-by-process claims only could be supported," the solicitor says, "There is no issue in this case concerning product-by-process claims, and appellants have no need to take objection to the comments concerning such claims." As to the board's expressed thought that the claims themselves are not sufficiently definite to be in compliance with section 112, the solicitor seems to dispose of this by his admission in the following statement:

> The arguments made by appellants do not squarely face the real issue in this case. Thus, they argue that no compound or mixture of compounds can be proposed that definitely would or would not be included in the claims * * *. *Certainly*, there is *no doubt* about appellants' intention to claim *all possible mixtures* of isomers of the group of compounds generally disclosed. [Emphasis ours.]

We agree with the solicitor, and the appellants, that it is perfectly clear *what* is being claimed and hold that the claims cannot be criticized as in non-compliance with section 112 for indefiniteness.

As to the claims per se, this leaves the question of undue breadth. The examiner and the board appear to have based this objection on the failure of the claims to specify the ring *positions* of the several alkyl, halogen, and sulfonic acid substituents. In view of the ample disclosure showing that position is unimportant to the utility of the mixtures, at least for the general surfactant utilities, and in the absence of any prior art of record before us or now relied on, we find that the claims are no broader than the disclosed invention and refuse to sustain any rejection based on their undue breadth. Such a rejection must be based on a discrepancy between scope of disclosure and scope of claim.

The only question remaining for consideration, then, is the objection to the sufficiency of the disclosure of the specification under section 112 to support the claims. This objection is thus stated by the solicitor in his brief:

> The objection is appellants' failure to disclose the *position* of all the substituents for any compound, which is a failure to disclose any specific compound. * * * The examiner and Board of Appeals have made the rejection in accordance with their under-

standing of the law involved, and the Court has only to determine whether the rejection is legally justified * * *.

We think the Patent Office position is not well taken. As we have made clear, and as we think the Patent Office has admitted, the claims are to *mixtures* of compounds produced by alkylating, halogenating, and sulfonating starting materials which are either diphenyl oxides or the phenyl compounds subsequently condensed to make such oxides. What results from these procedures is not pure compounds but mixtures of compounds. That is what appellants want, it is what they get, and it is what they claim. Appellants are not claiming *any* specific compound. To demand of them that they shall turn their investigations in another direction and carry on an undetermined amount of further research to determine just *where all* the substituents are positioned on each ring in *each* compound in each mixture of each working example in their specification seems to us beyond the requirements of the law. Neither the board nor the examiner cited any precedent for such a requirement. The solicitor has supplied none. The case of Ex parte Morton et al., 134 USPQ 407 (Bd.App.1961), was cited to the examiner and mentioned but disregarded in her Answer. It seems to indicate that the Patent Office has approved claims to compounds where the position of substituents were generically indicated.

On the whole record here, we are of the opinion that appellants' claims are commensurate with the invention disclosed and that the disclosure is sufficiently full, clear, and concise to enable that invention to be practiced by those skilled in the art. The decision of the board is reversed.

Reversed.

WORLEY, C. J., and KIRKPATRICK, J., took no part in the decision of this case.