**Application of James M. DONOHUE.**

**Patent Appeal No. 76–665.**

United States Court of Customs and Patent Appeals.

March 10, 1977.

Rehearing Denied April 14, 1977.

**1270**

Frederick E. McMullen, Bernard A. Chiama, Rochester, N.Y., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents, Thomas E. Lynch, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and SHIRO KASHIWA, Associate Judge, United States Court of Claims.

1. A continuation of application serial No. 731,-967, filed May 24, 1968, now abandoned.

2. Appellant maintains that a light image of the *entire platen* is projected, a critical difference, as will be seen, infra.

MARKEY, Chief Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals (board) rejecting claims 8, 9, and 10 under 35 U.S.C. § 112, first paragraph, in application serial No. 145,013, filed May 19, 1971, for "Selective Development Control for Electrostatic Reproduction Machines." [1] We affirm.

### The Invention

An item to be copied (document) is placed upon a transparent platen. A light image of the document is projected onto a moving, charged photoconductive member.[2] Light areas of the document will reflect light and will discharge portions of the member corresponding to the light areas. Dark areas of the document will not reflect light and will leave a charged area on the member. Toner particles are collected on the charged area and are transferred therefrom to the copy paper.

All areas of the member upon which light is not projected remain charged. The charged areas of the member thus include those corresponding to the dark areas of the document and those additional areas created between and around documents successively exposed as the member moves. A "charge removing means" (discharge lamp) across the moving path of the member is energized and de-energized to dissipate the charge in the additional areas. Energizing of the discharge lamp must be controlled to limit discharge to the additional areas and to avoid discharge of the area corresponding to the dark area of the document. Appellant's "control means," i. e., his control circuit, is depicted in the drawings as a block labeled "LOGIC." Appellant's specification merely describes the function of the control circuit as that of dissipating the charge in the additional areas. No specific circuit is disclosed.

Claim 9 [3] is illustrative:

3. Claim 9 was suggested by the examiner for the purpose of interference and copied by appellant.

9. An apparatus for forming an electrostatic image on a photoconductive layer in accordance with an original comprising:

charging means for applying a uniform charge to the layer,

exposing means for exposing a charged surface of the layer in accordance with the original to provide an electrostatic image on the charged surface occupying less than all of the surface,

sheet feeding means for moving the layer past the charging means and the exposing means,

charge removing means for removing the charge from the charged surface of the layer,

and control means for controlling the charge removing means to operate the charge removing means to remove the charge on the portion of said surface that is not occupied by the electrostatic image subsequent to the formation of the electrostatic image by the exposing means.

### Proceedings Below

The board reversed the examiner's rejection under 35 U.S.C. § 102 and, exercising its authority under 37 CFR 1.196(b), entered a new rejection under 35 U.S.C. § 112, first paragraph, for insufficient disclosure of the control means, stating:

The disclosure as it stands, would not enable those skilled in the art to practice the invention without designing a control system to actuate the charge removal apparatus. Appellant's total disclosure of the control circuit is to be found in a mysterious block labeled, "LOGIC." We do not know what is in this block or exactly how it receives its inputs from the remainder of the equipment.

As we view it, an unreasonable amount of experimentation would be required before one of ordinary skill in the art could practice the invention.

The board maintained its position on reconsideration. It further reasoned that simple timing circuits, if available, would not be adequate to control the discharge lamp because the additional areas would vary with the size of the document. The board found conclusory an affidavit of Webb, an electrical engineer employed as senior scientist for eleven years by Xerox Corporation. The pertinent assertions in the affidavit are:

That as a result of my reading of application S.N. 145,013, I could without undue experimentation provide control logic to operate discharge lamp LMP–5 in the manner described in application S.N. 145,-013, more particularly, that I, using my knowledge and training as a graduate electrical engineer and the experience of one working in the copier art, and using standard state of the art circuits, components and parts, could, with minimal experimentation, provide for the box-like representation identified as "LOGIC L" in application S.N. 145,013 timing circuits which would produce a signal activating discharge lamp LMP–5 at the beginning of the copying cycle; which would interrupt said signal to turn discharge lamp LMP–5 off when an image formed on the photoreceptor moves past the discharge lamp LMP–5; and which would terminate said signal at the end of the copy cycle in the manner described in application S.N. 145,013.

### Issue

■ The sole issue is whether appellant's disclosure of a block labeled "LOGIC" in a drawing and a description of its function as a mere control circuit is adequate under 35 U.S.C. § 112, first paragraph, to enable one skilled in the art to construct a circuit effective to control the operation of the discharge lamp as set forth in the claim.

### OPINION

■ Employment of block diagrams and descriptions of their functions is not fatal under 35 U.S.C. § 112, first paragraph, providing the represented structure is conventional and can be determined without undue experimentation. *In re Ghiron*, 442 F.2d 985, 58 CCPA 1207, 169 USPQ 723 (1971). It is apparently agreed by the parties that a conventional circuit would be

effective to control the discharge lamp if the additional areas to be discharged were unvarying and that a more sophisticated circuit would be required if the additional areas were of varying sizes and configurations.

Dispute exists over the meaning of the term "image" in the claims. Appellant argues that "image" must be understood as referring to the exposed area on the member, that the exposed area corresponds to the platen size and that the "image" will thus be constant. The board, on the other hand, notes that "image" may be understood as that of the document, that documents to be copied may vary in size, and that the "image" will thus vary. If the "image" be constant, the additional areas to be discharged will also be constant and a simple circuit will serve. If the "image" be varying, the additional areas to be discharged will vary and a sophisticated circuit will be required.

The parties having argued the case around the meaning of the word "image" in the claim, we look to the specification for guidance. *In re Moore,* 439 F.2d 1232, 58 CCPA 1042, 169 USPQ 236 (1971).

The specification includes the statement, "As in all electrostatic systems such as a xerographic machine of the type illustrated, a *light image of a document* to be reproduced is projected onto the sensitized surface of a xerographic plate to form an electrostatic latent image thereon" (emphasis ours). Appellant incorporated by reference in his specification a Hewes et al. application (Hewes)[4] disclosing a xerographic reproduction machine in which the image area varies with document size and with the size of the copy paper.[5]

Appellant's reliance on the disclosure and description of the timing chart in Hewes' Figures 69 and 70 is unavailing. The chart reflects a single timing cycle involving numerous machine components but does not

list a discharge lamp. One skilled in the art would not be taught thereby to construct a circuit effective to control the discharge lamp in response to changes in document size.

Though appellant argues that light would be reflected by the bare portion of the platen regardless of document size, the platen is transparent. No written description of reflection by the platen appears in the specification.

There is no evidence of record establishing that one skilled in the art would understand that the "image" was intended to be constant, or that a platen cover would be employed to insure a constant image regardless of document size, thus permitting use of a simple circuit.

We conclude, therefore, that the specification and drawings fail to disclose that the "image" would be constant and that a conventional circuit could be employed as the "control means" set forth in the claim. Hence the block diagram and function description were inadequate under 35 U.S.C. § 112, first paragraph.

The Webb affidavit does not overcome the board's finding of inadequacy of disclosure. We agree with the board that the affidavit is conclusory, citing no specific control circuits effective to achieve the function of the claimed control means, and being premised upon the gratuitous assumption that the image area is defined by the platen area.

Accordingly, the decision of the board is *affirmed.*

*AFFIRMED.*

---

4. Application serial No. 731,934, filed May 24, 1968, for "Xerographic Reproduction Machine," now U.S. Patent No. 3,661,452.

5. Hewes teaches that image forming light rays emanate "from the four corners of the original"

(document)—not from the four corners of the platen.