NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARK H. SANDSTROM,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**XENOGENIC DEVELOPMENT LLC,**
*Intervenor*

---

2025-1269

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1391.

---

Decided:  January 9, 2026

---

MARK H. SANDSTROM, Alexandria, VA, pro se.

JONATHAN LINK, Office of the General Counsel, United States International Trade Commission, Washington, DC, for appellee.  Also represented by MICHELLE W. KLANCNIK, MARGARET D. MACDONALD.

JOHN CHRISTOPHER ROZENDAAL, Sterne Kessler

Goldstein & Fox PLLC, Washington, DC, for intervenor. Also represented by JOHN HYLTON, MICHAEL E. JOFFRE.

_____

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Mark Sandstrom[1] appeals the final determination of the U.S. International Trade Commission ("the Commission"), which affirmed the Administrative Law Judge's ("ALJ") summary determination of no infringement of U.S. Patent Nos. 10,567,474 ("'474 Patent") and 10,848,546 ("'546 Patent") (collectively, "the Asserted Patents") and no violation of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"). We have jurisdiction under 28 U.S.C. § 1295(a)(6). We affirm.

This case involves optical line termination ("OLT") devices and optical network terminal ("ONT") devices ("the Accused Products"). OLT devices are utilized by network service providers to split an incoming optical signal into multiple signals, which can then be provided to end users of the service provider's network. OLTs can also multiplex

_____

[1] On December 4, 2024, the same day the Commission's final determination issued, Optimum Communication Systems, Inc. ("OCS"), assigned the Asserted Patents to Sandstrom. Sandstrom's notice of appeal was docketed in this Court on December 10, 2024. ECF No. 1. On July 23, 2025, the Court ordered Sandstrom to file supplemental briefing addressing his standing to appeal. ECF No. 37. Sandstrom filed a response asserting that he has standing, ECF No. 38, and the Commission does not dispute that Sandstrom has sufficiently established standing for purposes of this appeal. We agree with the Commission that Sandstrom has established standing to pursue his appeal. As such, this Opinion references "OCS" when discussing the proceedings below, and "Sandstrom" when addressing the present appeal.

incoming optical signals received from end users back into a single optical signal. On the other hand, ONT devices are utilized at the end user's network to process the incoming optical signal for use at the end user's devices.

On January 19, 2024, OCS filed a complaint against Changsha Silun Network Technology Co., Ltd.; Hunan Maiqiang Network Technology Company Limited; Hunan Zikun Information Technology Co., Ltd.; and Guangzhou Qiton Electronics Technology Co., Ltd., alleging a violation of Section 337 for the importation into the United States, sale for importation, and sale within the United States of the Accused Products. OCS alleged that the Accused Products infringed claims 1, 2, and 4–7 of the '474 Patent and claims 1–3 and 5–9 of the '546 Patent. Specifically, OCS alleged that the Accused Products comply with specific versions of certain standards and extensions, known as RFCs,[2] and that those standards and extensions, in turn, are covered by claims of the '474 Patent and '546 Patent. The standards and extensions at issue in this case are RFC 6241 ("NETCONF"), RFC 7950 ("Yang 1.1"), RFC 8526 ("NETCONF Extension"), and RFC 8342 ("NMDA").

On May 14, 2024, the ALJ found all four companies in default, and on June 13, 2024, the Commission declined to review the ALJ's decision, making it the final determination of the Commission. Subsequently, OCS moved for summary determination and requested a general exclusion order ("GEO").[3] In turn, the Office of

---

[2] RFCs originally stood for "Requests for Comment" and are standards promulgated by the Internet and Engineering Task Force.

[3] Because OCS requested a GEO under Section 337(g)(2), it had to establish, among other things, a violation of Section 337, which entails demonstrating the underlying act of infringement. *See* 19 C.F.R. § 210.16(c)(2) ("The Commission may issue a general exclusion order

Unfair Import Investigations ("OUII") filed an opposing motion for summary determination of no infringement and no violation of Section 337. The ALJ granted OUII's motion and concluded that: (1) OCS's evidence that the Accused Products generically comply with the NETCONF and YANG standards was insufficient to show compliance with the specific standards upon which its infringement allegations rely; (2) OCS failed to provide evidence that the NETCONF and YANG standards require a "user interface," as required by all asserted claims; and (3) OCS identified insufficient evidence that the Accused Products meet the "a set of remote elements" limitation. On review, the Commission affirmed the ALJ's initial determination of non-infringement and no violation of Section 337 and terminated the investigation.

On appeal, Sandstrom challenges the summary determination. Summary determination is proper "if pleadings and any depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary determination as a matter of law." 19 C.F.R. § 210.18(b). "We review summary determinations de novo." *Hazani v. U.S. Int'l Trade Comm'n*, 126 F.3d 1473, 1476 (Fed. Cir. 1997) (citation omitted).

Sandstrom raises four main arguments as to why summary determination of no infringement was improper. First, Sandstrom argues OCS produced evidence which proved infringement. Second, Sandstrom argues the ALJ acted "arbitrary and capricious" by deciding OUII's motion for summary determination before his own. Third, Sandstrom argues it was improper for the ALJ to rely on "Complainant's own [infringement allegation]" in deciding OUII's motion. Fourth, Sandstrom argues that the ALJ

---

pursuant to section 337(g)(2) . . . provided that a violation of section 337 . . . is established by substantial, reliable, and probative evidence . . . .").

applied an incorrect evidentiary standard under Section 337(g)(2).  As Sandstrom's last three arguments are not persuasive, we only consider the argument that OCS produced evidence sufficient to raise a genuine issue of fact regarding infringement.

"An infringement analysis entails two steps. The First step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996) (citation omitted).  As relevant to this appeal, "[i]nfringement can be proven based on an accused product's use of an industry standard if the asserted claim is standard essential." *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022) (citations omitted).  "Claims are standard essential if the reach of the claims includes any device that practices the standard." *Id.* (internal quotation marks and citation omitted).  However, "[a]n accused infringer is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).

In moving for summary determination, OUII argued, among other things, that OCS failed to present any evidence that the Accused Products utilize the specific versions of the standards on which OCS's infringement allegations rely.  Therefore, to defeat summary determination,[4] as to this argument, OCS, as the non-movant, had to raise a genuine issue of material fact regarding whether the Accused Products support the specific standards. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52, 256 (1986).  In responding to OUII,

---

[4] Summary determination under 19 C.F.R. § 210.18(b) is governed by the criteria of summary judgment. *Amgen Inc. v. Int'l Trade Comm'n*, 565 F.3d 846, 849 (Fed. Cir. 2009) (citations omitted).

OCS produced three pieces of evidence: (1) advertisements of the Accused Products, (2) three claim charts, and (3) a legal opinion. We address each piece of evidence in turn.

First, while the advertisements produced by OCS do state that the devices support "NETCONF" and "YANG," they give no additional detail as to what specific versions of the standards they support. As opined by OUII's expert, Dr. Simon, in his report:

> In my opinion, based at least on the information identified above, a person of skill would not know merely from the labels "NETCONF" and "YANG" what versions of the standards are supported by a device. Rather, persons of skill would understand that the device could support older or newer versions of the standards and may in fact use standards that are the result of industrial consortiums or proprietary standards and capabilities.

Although Sandstrom takes issue with Dr. Simon's expert report, he has failed to rebut it in any way.[5] As such, without more, these advertisements are insufficient to raise a genuine issue as to whether the Accused Products utilize the specific versions of the standards on which OCS's infringement allegations rely.

Second, the three claim charts produced by OCS also fail to raise a genuine issue of material fact regarding infringement because they fail to disclose whether the Accused Products practice the specific versions of the various standards. The claim charts simply compare the

[5] A majority of Sandstrom's arguments regarding the expert report are that he "was not given the opportunity to cross-examine the [expert]." This is incorrect. During a case management conference, on October 8, 2024, Judge Bhattacharyya specifically asked Sandstrom if he had been given an opportunity to depose Dr. Simon, to which Sandstrom answered in the affirmative.

language of the standards to the language of the asserted claims without showing that the Accused Products practice the standards.  Simply put, the claim charts fail to raise a genuine issue as to whether the Accused Products practice the specific versions of the standards OCS's infringement allegations rely on.  Third, OCS's produced legal opinion, regarding infringement, amounts to nothing more than unsworn attorney argument, which is not evidence.  *See Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) (noting that "unsworn attorney argument . . . is not evidence").

We have considered Sandstrom's remaining arguments but do not find them persuasive.  For the foregoing reasons, we affirm the Commission's final determination of no infringement and no violation of Section 337.[6]

**AFFIRMED**

---

[6]  Sandstrom's reply brief, ECF No. 40, incorporated a motion to strike the Commission's response brief because "it extensively relies on its 'Appx' that was not filed with the Court or served on [him]."  ECF No. 40-1 at 5.  On October 23, 2025, the Commission was granted leave to file a response, and the motion to strike was deferred for consideration by the merits panel assigned to this appeal.  ECF No. 49.  In its response, the Commission asserts that Sandstrom was given a working appendix on September 3, 2025, and informed him that he would be allowed to amend his reply brief and refile by the original deadline of September 18, 2025.  ECF No. 43.  Based on the foregoing, Sandstrom's motion to strike is denied.